**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

FULLSEND, INC.,

<div style="margin-left:2em"></div>

*Plaintiff*,

**AMENDED**
**REPORT AND**
**RECOMMENDATION**

-against-

22-CV-03741 (OEM) (JMW)

CANNAFELLAS GROUP, INC.,
KASHICBD, INC., SCOTT CICERONE,
And GIACOMO PAMPINELLA

*Defendants*.

-------------------------------------------------------------------X

**A P P E A R A N C E S:**

Michael G. Gabriel
**Gabriel & Pelaez, PLLC**
72-11 Austin St.
Ste Pmb 406
Forest Hills, NY 11375
*Attorneys for Plaintiff*

-and-

Andrew Bochner
**Bochner PLLC**
1040 Avenue of the Americas
Ste 15th Floor
New York, NY 10018
*Attorneys for Plaintiff*

No Appearance for Defendant Cannafellas Group, Inc.

**WICKS**, Magistrate Judge:

Plaintiff FullSend, Inc. ("Plaintiff") commenced this action against Defendants Cannafellas

Group, Inc., KashiCBD Inc., Scott Cicerone, and Giacomo Pampinella ("Defendants") alleging:

(i) trademark infringement, (ii) trade dress infringement under the Lanham Act (the "Act"), (iii)

common law trade dress infringement, (iv) unfair competition under common law, (v) unfair competition under the Lanham Act, (vi) deceptive practices and false advertising, (vii) trademark dilution and (viii) passing off. (*See generally* ECF Nos. 1, 22.) Before the Court on referral from the Hon. Orelia E. Merchant is Plaintiff's Motion for Default Judgment (ECF No. 64) against *only* Defendant Cannafellas Group, Inc. ("Cannafellas" or "Defaulting Defendant"). For the reasons stated herein, the undersigned respectfully recommends that the Court **GRANT** Plaintiff's Motion for Default Judgment (ECF No. 64).

<div align="center">

**BACKGROUND**

</div>

I.    *Factual Background*

The following allegations are drawn from the Amended Complaint. (ECF No. 22.) Plaintiff is an Oregon corporation specializing in CBD products, including CBD gummy candies, with its principal place of business located in Holbrook, NY. (*Id.* at ¶ 4.) Plaintiff has become well-known for its uniqueness and has established its distinct products. (*Id.* at ¶ 2.)

Defendant KashiCBD Inc. ("Kashi CBD") is a New York corporation with a principal place of business in Babylon, New York. (*Id.* at ¶ 6.) Defendant Cannafellas Group, Inc. ("Cannafellas") is a New York corporation with a principal place of business in Babylon, New York. (*Id.* at ¶ 7.) Both Cannafellas and Kashi CBD share the same address. (*Id.*)

Defendant Scott Cicerone ("Cicerone") is an individual and a resident of New York. (*Id.* at ¶ 8.) Cicerone is the owner of Kashi CBD stores, CEO of Cannafellas.com CBD products, and the principal of Kashi CBD. (*Id.* at ¶¶ 9, 12.) Defendant Giacomo Pampinella ("Pampinella"), owner of Kashi CBD and Cannafellas, is a resident of New York. (*Id.* at ¶¶ 10–11.)

Plaintiff alleges that Defendants sought to benefit from Plaintiff's distinctive trade dress

<div align="center">2</div>

and design and subsequently rebranded and redesigned its product to echo Plaintiff's design and therefore infringed on Plaintiff's trade dress and trademarks. (*Id.* at ¶ 2.) These actions led to the commencement of this lawsuit.

## II.    *Procedural Background*

Plaintiff filed the Original Complaint on June 24, 2022. (ECF No. 1.) Service was effectuated on Defendants as of June 28, 2022. (ECF No. 7.) On July 18, 2022, Defendants filed an Answer and Affirmative Defenses. (ECF No. 8.) The parties entered into two stipulations, whereby the Defendants would file an amended answer with affirmative defenses to include a counterclaim for declaratory relief to invalidate the subject mark, and Plaintiff would file an amended complaint following the amended answer. (ECF Nos. 10, 16-17.) An Initial Conference was held before the undersigned and a Scheduling Order was entered. (ECF Nos. 14-15.)  As stipulated to, Plaintiff filed their Amended Complaint against all Defendants on October 7, 2022. (ECF No. 22.) As no answer was filed to the Amended Complaint, on November 17, 2022, Plaintiff requested a Certificate of Default. (ECF No. 23.) The Clerk of the Court entered a Certificate of Default against all Defendants. (ECF No. 24.) Thereafter, Defendants filed an untimely Amended Answer, Affirmative Defenses, and Counterclaims on December 28, 2022. (ECF No. 25.) On January 6, 2023, Plaintiffs filed their Motion for Default Judgment against all Defendants. (ECF No. 26.) While Plaintiff's Motion for Default Judgment was pending, the Court preliminarily reviewed the Motion and directed Plaintiff to supplement its pending motion with additional information to support the reasonableness of its request for fees by January 24, 2023. (Electronic Order dated January 10, 2023.)

On January 16, 2023, Counsel for Defendants filed a Motion to Withdraw as Counsel, which was subsequently granted at a hearing before the undersigned. (ECF Nos. 27-30, 35-36.)

At this time, Plaintiff also filed the supplemental information in support of its Motion for Default Judgment. (ECF No. 31.) However, Plaintiff's Motion for Default Judgment was denied without prejudice and with leave to refile because based upon the grant of the application to withdraw, the proceedings were stayed until June 9, 2023, to allow Defendants time to retain new counsel. The two corporate entity Defendants were also advised that they cannot proceed *pro se*. (ECF No. 36.) The pro se entities were served with copies of the Orders reminding them that they cannot proceed *pro se*. (ECF No. 37.) On July 9, 2023, the undersigned again reminded *pro se* entities that they cannot proceed *pro se* and forewarned that if counsel does not appear on their behalf at the July 19, 2023 status conference, the Court would recommend default judgment be entered against them. (Electronic Order dated 7/9/2023.) That Order was served on the *pro se* Defendants. (ECF No. 40.)

At the July 19, 2023 Conference, there was no appearance by Cicerone or Cannafellas, and so the Court extended time for those parties to retain counsel while cautioning that failure to do so, would result in Plaintiff being afforded the opportunity to refile for default. (ECF No. 41.) That Order was served on non-appearing Defendants. (ECF No. 42.) The undersigned held another Status Conference, where Cicerone and Cannafellas failed to appear again and because of this, Plaintiff was directed to file a letter indicating its intent to renew its Motion for Default Judgment and, specifically whether such motion will be as to all or only some of the Defendants. (ECF No. 44.) At this time, Defendants Kashi CBD and Pampinella had retained counsel. (ECF Nos. 38, 43.) *Pro se* Defendants were served with the previous mentioned Order. (ECF No. 45.)

Throughout the next few months, Plaintiff intended to move for default and instead, engaged in settlement discussions. (ECF Nos. 46-51.) A Settlement Conference was held

before the undersigned and the case settled. (Electronic Order dated 1/12/2024.) On August 12, 2024, the parties filed a Stipulation of Dismissal. (ECF No. 59.) However, the Stipulation was deficient because, contrary to Rule 41, all parties did not sign the stipulation. (Electronic Order dated 8/13/24.) On August 17, 2024, the undersigned issued an Order again advising Cannafellas that a corporate entity cannot proceed *pro se* in federal court. (Electronic Order dated 8/17/2024.)

On October 22, 2024, Plaintiff filed a letter stating that the parties intend to dismiss all claims and counterclaims with prejudice but discovered that Cannafellas is "no longer operating." (ECF No. 60.) Plaintiff indicated at the November 7, 2024 Status Conference, its intent to file a Motion for Default Judgment against Cannafellas (ECF No. 61), and filed such Motion on January 21, 2025 (ECF No. 64). Plaintiff's Motion for Default Judgment was referred to the undersigned by Judge Merchant. (*See* Electronic Order dated January 23, 2025.)

In sum, Cannafellas was forewarned by the Court no less than *five* times, that if it continued to appear *pro se* that would lead to a recommendation of default judgment. (ECF Nos. 36, 44; Electronic Orders dated 5/23/23, 7/9/23, 8/17/2024.)

## THE LEGAL FRAMEWORK

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55. First, as here, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action. *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Local R. 55.1(b) and 55.2. After the clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2. The decision to grant a motion for default is left to the sound discretion of the district court. *No Limit Auto Enterprises, Inc. v. No Limit Auto Body, Inc.*, No. 2-1CV-4755 (AMD)(JMW), 2022 WL

18399477, at *2 (E.D.N.Y. Dec. 12, 2022), *report and recommendation adopted*, 2023 WL 348271 (E.D.N.Y. Jan. 19, 2023). As the Clerk has already entered default against Defaulting Defendant (ECF No. 24), the Court is primarily concerned with Plaintiff's compliance with E.D.N.Y. Local R. 55.2.

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878 (RJD)(JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (finding that a default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true). "Where damages are susceptible to simple mathematical calculation and the plaintiff provides a 'sufficient basis from which to evaluate the fairness' of the requested damages, no evidentiary hearing is necessary." *Euro Pac. Capital Inc. v. Bohai Pharm. Grp., Inc.*, No. 15-CV-4410 (VM), 2018 WL 1596192, at *5 (S.D.N.Y. Mar. 28, 2018) (quoting *Am. Jewish Comm. v. Berman*, No. 15-CV-5983 (LAK) (JLC), 2016 WL 3365313, at *4 (S.D.N.Y. June 15, 2016), *report and recommendation adopted*, No. 15-CV-5983 (LAK), 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016)).

However, a plaintiff must still demonstrate that the allegations set forth in the Complaint state valid claims. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("[A] district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted). The Court, thus, must ensure: (i) Plaintiff satisfied all required procedural steps in moving for default judgment, *see*

6

Local Civ. R. 55.2; and (ii) Plaintiff's allegations, when accepted as true, establish liability as a matter of law. *See Finkel*, 577 F.3d at 84; and (iii) Plaintiff's request for damages is adequately supported.

With this legal framework in mind, the undersigned analyzes the Motion for Default Judgment.

## **DISCUSSION**

### I. ***Procedural Compliance***

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion. E.D.N.Y. Local R. 7.1(a)(1) - (3). Local Civil Rule 55.2 requires that a party moving for default judgment append to its application an affidavit or declaration demonstrating that (A) the Clerk has entered default against the Defendant, (B) the movant has complied with the Servicemembers Civil Relief Act, 50 U.S.C. § 3901 ("SCRA"), and (C) that the individual defaulting defendant is not a minor or incompetent person, as well as all papers required by E.D.N.Y. Local Rule 7.1 (*supra*), and a proposed judgment and certificate of service that all documents in connection with the motion for default judgment has been personally served on or mailed to the defaulting defendant residence or business address. E.D.N.Y. Local R. 55.2(a)(1)-(3). Recently added under the Local Rules is that the moving party "must file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs." E.D.N.Y. Local R. 55.2(c).

With respect to the non-military affidavit, before a default judgment can be entered for the plaintiff, the SCRA commands that the Court "require the plaintiff to file with the court an

affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." *ADI Glob. Distribution v. Green*, No. 20-CV-03869 (AMD) (JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023) (citing 50 U.S.C. § 3931(A)). The SCRA requirement is inapplicable where, as here, a defendant is a corporation, rather than an individual. *See Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CV-5624 (ARR) (VMS), 2020 WL 6370148, at *9 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (only applying service members civil relief act to the individual defendants).

Here, the motion against the defaulting Defendant fully complies with Local Rule 7.1 and Local Rule 55.2(a)(2) because it includes (1) a notice of motion (ECF No. 64); (2) a memorandum of law (ECF No. 64-1); (3) affidavits and exhibits to support Plaintiff's contentions (*see* ECF Nos. 64-2, 64-6); and (4) a proposed order detailing the proposed judgment (ECF No. 64-7).  The motion further complies with Local Rule 55, as Plaintiff properly attached and submitted a declaration affirming that the Certificate of Default was entered by the Court on December 5, 2022 (ECF No. 64-2 at ¶ 18, 64-5.) Plaintiff has also filed affidavits of service certifying that the requisite documents were served on Defaulting Defendant via mail. (ECF Nos. 62-63, 65-66.) Finally, Local Rule 55.2(c) requiring a statement of damages is not applicable here given that Plaintiff seeks injunctive relief rather than money damages. E.D.N.Y. Local R. 55.2(c). Accordingly, the undersigned finds that the Motion for Default Judgment is procedurally proper and now turns to the merits.

## II.    *Default Factors*

In evaluating whether to grant a default judgment, courts consider: (i) whether the

defendant's default is willful; (ii) whether the defendant has a meritorious defense to plaintiff's claims; and (iii) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied. *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317 (ADS)(AKT), 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013). Consideration of these three factors leads to a recommendation that an entry of default judgment is appropriate where, as here, Defendant continues to proceed *pro se* after fair warnings that proceeding as such may result in default judgment.[1]  *See Reagan v. Jennifer Matthew Nursing & Rehab. Ctr.*, No. 07-CV-6150P, 2010 WL 2869551, at *1 (W.D.N.Y. July 20, 2010) (citing *R. Maganlal & Co. v. M.G. Chem. Co.*, No. 88-CV-4896 (MJL) (THK), 1996 WL 715526, at *2 (S.D.N.Y. Dec. 12, 1996) ("A corporation's failure to retain counsel within a specified period of time may result in a default judgment against the corporation.")); *Grace v. Bank Leumi Tr. Co. of NY*, 443 F.3d 180, 192 (2d Cir. 2006) (collecting cases on *pro se* corporate defendants and the ability to enter default judgment against such unrepresented entities); *see also DMKA LLC v. Chandler W T LLC*, No. 23-CV-3296 (BMC), 2024 WL 406549, at *1 (E.D.N.Y. Feb. 2, 2024) (granting default judgment against a *pro se* corporate defendant).

### III.  *Jurisdiction*

#### A. *Personal Jurisdiction*

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). Since a judgment rendered against a defendant over

---

[1] The Court has warned of the consequences and reminded the Defaulting Defendant of its requirement to retain counsel five times. *See* ECF Nos. 36, 44; Electronic Orders dated 5/23/2023, 7/9/2023, 8/17/2024.

whom the Court does not have personal jurisdiction can be vacated pursuant to Rule 60(b)(4), it "preserves judicial economy for the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment." *ADI Glob. Distribution*, 2023 WL 3355049, at *3 (citation omitted). Here, a *sua sponte* assessment of personal jurisdiction is appropriate in this action. *Id*.

For a court to exercise personal jurisdiction: (i) a plaintiff must complete proper service of process, (ii) there must be a statutory basis for personal jurisdiction that renders such service of process effective, and (iii) the exercise of personal jurisdiction must comport with constitutional due process principles. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673. F.3d 50, 60–61 (2d Cir. 2012).

Service was procedurally proper here. Rule 4(c) requires that a summons must be served with a copy of the Complaint and by a person who is at least 18 years old and not a party to the case. *See* Fed. R. Civ. P. 4(c). Further, Rule 4(h) provides that a domestic or foreign corporation may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." *See* Fed. R. Civ. P. 4(h)(1)(B); *Hartford Fire Ins. Co. v. Queens Cnty. Carting, Inc.*, No. 20-CV-01844 (NSR), 2022 WL 254367, at *2 (S.D.N.Y. Jan. 27, 2022) (quoting Fed. R. Civ. P. 4(h)(1)(A); (e)(1)) ("Under Rule 4(h)(1)(A), a corporation may be served 'in the manner prescribed by Rule 4(e)(1) for serving an individual,' which includes 'following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]'"). Under New York law, service on a corporation may be made by serving a designated agent of the corporation or by serving one of its officers. *See* N.Y. Bus. Corp. Law § 305(a) ("every domestic corporation or

authorized foreign corporation may designate a registered agent in this state upon whom process against such corporation may be served. The agent shall be a natural person who is a resident of or has a business address in this state or a domestic corporation or foreign corporation of any type or kind formed, or authorized to do business in this state, under this chapter or under any other statute of this state."); N.Y. C.P.L.R. § 311(a)(1) ("Personal service upon a corporation … shall be made by delivering the summons as follows: [] upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service.").

Here, the Affidavit of Service for Defaulting Defendant shows that Scott Cicerone, as Owner and President of Defendant was personally served on June 27, 2022.  (ECF Nos. 7 at 1; 64-3 at 2.) Accordingly, service upon Defaulting Defendant was proper. *See Foley v. Cap. One, N.A.*, No. 25-CV-1526 (VB) (RWL), 2025 WL 958758, at *3 (S.D.N.Y. Mar. 31, 2025) (citing N.Y. CPLR § 311(a)(1) ("Under New York law, personal service on a corporation can be made by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." N.Y. CPLR § 311(a)(1); *Duff v. Northwell Health Inc. - Syosset Hosp.*, No. 24-CV-5683 (NJC)(ARL), 2025 WL 1235117, at *2 (E.D.N.Y. Apr. 29, 2025) (same)).

Additionally, Plaintiffs brought this action pursuant to the Lanham Act, 15 U.S.C. §§ 1052 and 1125, *et seq.*, alleging claims of trademark infringement, and thus, the Court has subject matter jurisdiction under federal question jurisdiction. *See* 28 U.S.C. § 1331. In cases arising under federal question jurisdiction, where, like here, the statutes conferring jurisdiction do not contemplate nationwide service of process, personal jurisdiction is determined by the law of the state in which the district court sits.  *See Pettenato v. Beacon Health Options, Inc.*, 425 F.

Supp. 3d 264, 277 (S.D.N.Y. 2019).  Thus, the Court first looks to New York law for the purpose of determining personal jurisdiction over Defaulting Defendant in New York. Then, the Court evaluates whether the "exercise of jurisdiction under state law satisfies federal due process requirements of 'fair play and substantial justice.'" *Mortg. Funding Corp. v. Boyer Lake Pointe, LLC*, 379 F. Supp. 2d 282, 286 (E.D.N.Y. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Pursuant to New York law, "[f]or a plaintiff to demonstrate personal jurisdiction over a defendant … the plaintiff must show either that the defendant was present and doing business in New York within the meaning of C.P.L.R. § 301," known as general jurisdiction, "or that the defendant committed acts within the scope of New York's long-arm statute, C.P.L.R. § 302," known as specific jurisdiction. *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 385 (E.D.N.Y. 2015) (quoting *Reich v. Lopez*, 38 F.Supp.3d 436, 454 (S.D.N.Y.2014) (internal alterations and quotations omitted) (quoting *Schultz v. Safra Nat'l Bank of New York*, 377 Fed. Appx. 101, 102 (2d Cir.2010)).

The Court considers this issue in light of the Supreme Court's pronouncements in *Daimler* and *Goodyear*, where the Court noted that other than in "exceptional cases" the exercise of general jurisdiction is confined to a corporation's "place of incorporation and principal place of business." *See Aybar v. Aybar*, 177 N.E.3d 1257, 1265 (N.Y. 2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014)); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Here, Defaulting Defendant is a New York corporation with a principal place of business located in 65 Deer Park Ave, Babylon, New York, 11702. (*See* ECF No. 22 at ¶ 7.) Thus, the Court has general jurisdiction over Defendant.

Moreover, to satisfy the requirements of due process, the Defendant's activities in New

York must constitute "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum States, thus invoking the benefits and the protection of its laws." *Burger King*, 471 U.S. at 475. This involves a two-fold inquiry: (1) "minimum contacts," and (2) "reasonableness." *Sea Tow Servs. Int'l, Inc v. Pontin.*, 472 F. Supp. 2d 349, 360 (E.D.N.Y. 2007). Here, since Defaulting Defendant is domiciled in New York, thereby availing itself of jurisdiction, the minimum contacts and reasonable test is unnecessary. With this in mind, the Court finds a sufficient basis for the Court to exercise in personam jurisdiction here.

### IV.    <u>Liability</u>

In cases of default, the court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]" *Finkel*, 577 F.3d at 84. A defendant's default is considered an admission of all of the well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992). Here, Plaintiff is alleging: (i) trademark infringement, (ii) trade dress infringement, (iii) common law trade dress infringement, (iv) false designation of origin, (v) dilution, (vi) and unfair competition and passing off. (ECF No. 22 at ¶ 1.)

To determine liability, the undersigned must first consider what law is to be applied. Plaintiff brought this action under federal trademark laws and related claims under New York law. Therefore, this Court has both federal question jurisdiction and supplemental jurisdiction.  Seeing as these claims arise under both Federal Law and New York law, the following analysis will proceed accordingly.

### A.    *Count I: Trademark Infringement*

Plaintiff seeks default judgment against Defaulting Defendant for trademark infringement of the asserted marks under Section 43(a) of the Act. (ECF No. 22 at ¶¶ 47-55.) The Act

prohibits using "any word, term, name, symbol, or device, or any combination thereof . . . which is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A).

A plaintiff can prevail on a trademark infringement claim if it shows that the plaintiff "owns a valid trademark, and that the defendant's use of that trademark is likely to cause confusion regarding the source of the relevant product or services." *A.M. Surgical, Inc. v. Akhtar*, No. 15-CV-1318, 2016 WL 11543560 at *4 (E.D.N.Y. Apr. 19, 2016), *report and recommendation adopted*, 2016 WL 11543427 (E.D.N.Y. May 10, 2016) (quoting *Century 21 Real Est., LLC v. Raritan Bay Realty,* Ltd., No. CV-07-1455, 2008 WL 4190955 at *4 (E.D.N.Y. Sept. 3, 2008)). When evaluating whether the defendant's use of the trademark is likely to cause confusion, courts consider the eight *Polaroid* factors. *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). These factors are:

> (1) strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the proximity of the products in the marketplace; (4) the likelihood that the plaintiff will bridge the gap between the products (enter a market related to that in which the defendant sells its product); (5) evidence of actual confusion; (6) the defendant's bad faith; (7) quality of the defendant's product; and (8) sophistication of the relevant consumer group.

*Id.* However, no single *Polaroid* factor is dispositive; the court must weigh the factors as a whole and determine if consumers are likely to be confused. *Brennan's Inc. v. Brennan's Rest.*, 360 F.3d 125, 130 (2d Cir.2004).

Here, consideration of these factors leads to a finding that Plaintiff has sufficiently alleged a claim for trademark infringement. Specifically, Plaintiff asserts that the term "CANNA" on Defendant's products has caused confusion because Plaintiff's customers have "come to associate the word 'CANNA' with [Plaintiff's] unique Product packaging." (ECF No. 22 at ¶¶ 38-39.) Likewise, Plaintiff's "asserted marks" also

14

include the words "Send It!" and it appears that Defendant uses "Eat it!" in a very similar manner to cause customer deception. (*Id.* at ¶¶ 53, 55.) Therefore, Plaintiff properly pled a trademark infringement claim.

### B. Counts II and III: Trade Dress Infringement

Plaintiff further seeks default judgment against Defaulting Defendant for trade dress infringement under the Act and under common law. (ECF No. 22 ¶¶ 57-73.)  Trade dress includes "the design and appearance of the product as well as that of the container and all elements making up the total visual image by which the product is presented to customers. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 31 (2d Cir. 1995). In a trade dress infringement claim involving the appearance of a product, Plaintiff must:

> (1) offer a precise expression of the character and scope of the claimed trade dress; (2) allege that the claimed trade dress is nonfunctional; (3) allege that the claimed trade dress has secondary meaning; and (4) allege that there is a likelihood of confusion between the plaintiff's good[s] and the defendant's.

*Eliya, Inc. v. Kohl's Corp.*, No. CV 15–2123, 2016 WL 929266, at *4 (E.D.N.Y. Feb. 22, 2016), *report and recommendation adopted*, 2016 WL 929321 (E.D.N.Y. Mar. 9, 2016) (quoting *Sherwood 48 Assoc. v. Sony Corp., of Am.*, 76 F. App'x 389, 391 (2d Cir. 2003)). Further, Plaintiff must "offer a precise expression of the character and scope of the claimed trade dress and articulate the elements of their product design with specificity to be afforded trade dress protection." *Bubble Genius LLC v. Smith*, 239 F.Supp.3d 586, 593 (E.D.N.Y. 2017) (citation modified). "The standard for proving trade dress infringement under New York common law generally parallels the standard under the Lanham Act, except that there is no requirement to show secondary meaning for distinctive designs." *Capri Sun GmbH v. Am. Beverage Corp.*, 595 F. Supp. 3d 83, 187–88 (S.D.N.Y. 2022) (collecting cases).

Here, Plaintiff attaches pictures of the infringing products in its Amended Complaint

illustrating that there is potential for significant confusion in the marketplace. (ECF No. 22 at ¶¶ 57, 68.) Further, in the Amended Complaint, Plaintiff includes images of both products demonstrating the character and scope of the trade dress allegations. (*Id.* at 7-9, 11-14.) Lastly, Plaintiff outlines that their "trade dress includes unique, distinctive, and non-functional designs … [and] has extensively and continuously promoted and used its trade dress." (*Id.* at ¶¶ 59, 70) Thus, "[t]hrough that extensive and continuous use, [Plaintiff's] trade dress has become a well-known indicator of the origin and quality of [Plaintiff's] Products, and has also acquired substantial secondary meaning in the marketplace." (*Id.*)

Accordingly, Plaintiff has pled trade dress infringement under the Act and New York common law.

### C.  Count IV and V: Unfair Competition Under Lanham Act and Common Law

Plaintiff further brings claims for unfair competition under section 43(a) of the Act and New York common law. As an initial matter, unfair competition claims are analyzed in a similar fashion under both the Act and New York common law. *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 539 n.5 (2d Cir. 2005); *Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 273 (E.D.N.Y. 2014) (quoting *Medisim Ltd. v. BestMed LLC,* 910 F.Supp.2d 591, 606 (S.D.N.Y. 2012) ("The elements of unfair competition under New York State common law closely parallel the elements of unfair competition under the Lanham Act, except that a plaintiff must show 'either actual confusion or a likelihood of confusion, and there must be 'some showing of bad faith' on the part of the defendants.'")).

To establish a claim for unfair competition, plaintiff must show (i) a likelihood of confusion and (ii) bad faith. *Miss Universe, L.P., LLLP v. Villegas*, 672 F. Supp. 2d 575, 596 (S.D.N.Y. 2009) (citing *Milstein*, 58 F.3d at 35). "The essence of an unfair competition claim

under New York law is that the defendant has misappropriated the labors and expenditures of another with some element of bad faith." *Superb Motors Inc. v. Deo*, No. 23-CV-6188 (JMW), 2025 WL 888464, at *26 (E.D.N.Y. Mar. 21, 2025) (quoting *ML Genius Holdings LLC v. Google LLC*, No. 20-3113, 2022 WL 710744 at *4 (2d. Cir. Mar. 10, 2022) (quoting *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 50-51 (2d Cir. 2001)). Misappropriation claims "will fail where a plaintiff cannot demonstrate the bad faith misappropriation of a commercial advantage which belonged exclusively to him." *Big Vision Priv. Ltd. v. E.I. du Pont de Nemours and Co.*, 610 F. App'x 69, 70 (2d Cir. 2015) (quoting *LoPresti v. Mass. Mut. Life Ins. Co.*, 920 N.Y.S.2d 275, 277 (N.Y. App. Div. 2d Dep't 2006)).

In this case, Plaintiff has satisfied the elements of an unfair competition claim and sufficiently pled that (1) there is a likelihood of confusion and (2) Defendant acted in bad faith. Plaintiff asserts that infringing products are "likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association" between Defendant and Plaintiff. (ECF No. 22 at ¶ 75.) Second, Plaintiff asserts that the Defendant acted "intentional[ly], willful[ly], and malicious[ly]." (*Id.* at ¶¶ 79, 85.) Plaintiff further demonstrates Defendant's bad faith by incorporating photos of the infringing products to elucidate the similarity to Plaintiff's products. (*Id.* at 7-9, 11-14, ¶¶ 79, 85.) Thus, Plaintiff has sufficiently pled a claim for unfair competition under the Act and New York common law.

However, Courts have made it clear that stand-alone claims of unfair competition under the Lanham Act are deemed duplicative of a trademark infringement act. Under those circumstances, liability will only be granted as to unfair competition under New York common law. *See OSF Int'l, Inc. v. Spellicy,* No. 23-CV-00013 (MAD) (TWD), 2023 WL 6599087, at *4

17

(N.D.N.Y. Oct. 10, 2023) ("However, to the extent the amended complaint asserts a standalone cause of action for unfair competition under the Lanham Act, such a claim must be dismissed as duplicative of the federal trademark infringement claim, *i.e.*, First Cause of Action."); *see also Sussman-Automatic Corp.*, 15 F. Supp. 3d at 272-73 (holding the same).

Accordingly, Plaintiff has set forth a claim only for unfair competition under New York law. It therefore follows, that the District Judge should dismiss Plaintiff's Count V of unfair competition claim under the Lanham Act as it is duplicative of Count I – Trademark Infringement Claim under the Act.

### D. Count VI: Deceptive Practices and False Advertising

Next, Plaintiff seeks liability for deceptive practices and false advertising under New York Gen. Bus. Law §§ 349-50. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Lin v. Miracle Curtains, NY, Inc.*, No. 19-CV-5627 (VMS), 2022 WL 4386834, at *11 (E.D.N.Y. Sept. 22, 2022) (quoting N.Y. Gen. Bus. L. § 349(a)). Thus, a plaintiff must demonstrate "that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Id.* (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012))). "Additionally, Section 350 of the statute prohibits '[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'" *OSF Int'l, Inc.*, 2023 WL 6599087, at *7 (quoting N.Y. Gen. Bus. L. § 350). Under with Section, the same elements are required. *See Medisim Ltd.*, 910 F. Supp. 2d at 607 (discussing the elements); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 731 N.E.2d 608 (N.Y. 2000) (outlining the elements); *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp.

18

3d 386, 390 (E.D.N.Y. 2017) (same).

Even if the undersigned were to find Plaintiff properly pled these claims, New York courts "have routinely dismissed trademark claims brought under Sections 349 and 350 as being outside the scope of the statutes, because ordinary trademark disputes do not 'pose a significant risk of harm to the public health or interest' and are therefore not the type of deceptive conduct that the statutes were designed to address." *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 352–53 (S.D.N.Y. 2014) (collecting cases). Judge Oetken aptly described the interplay of these statutes as follows:

> The standards for bringing a claim under § 43(a) of the Lanham Act are substantially the same as those applied to claims brought under [§] 349. That is significant, because to fall within § 349, a claim must threaten an injury to the public interest over and above ordinary trademark infringement or dilution. Thus, courts in New York have routinely dismissed trademark claims brought under [§ 349] as being outside the scope of the statute[ ], because ordinary trademark disputes do not pose a significant risk of harm to the public health or interest and are therefore not the type of deceptive conduct that the statutes were designed to address.

*Portkey Techs. Pte Ltd. v. Venkateswaran*, No. 23-CV-5074 (JPO), 2024 WL 3487735, at *11 (S.D.N.Y. July 19, 2024), *reconsideration denied sub nom. Portkey Techs. Pte Ltd v. Venkateswaran*, No. 23-CV-5074 (JPO), 2024 WL 4404127 (S.D.N.Y. Oct. 4, 2024) (internal citations and quotations omitted) (cleaned up).

Accordingly, it is recommended that judgment not be entered on the Section 349 and 350 claim as asserted in the Complaint. However, if the District Judge disagrees, the Court proceeds with its analysis of that claim.

Plaintiff has not sufficiently alleged a claim for deceptive practices and false advertising under the General Business Law. Plaintiff has alleged that Plaintiff suffered injury through Defendant's conduct and will continue to suffer absent injunctive relief. (ECF No. 22 at ¶ 92.) Second, Plaintiff alleged that Defendant's actions were materially misleading through Defendant's platforms such as its website and social media, where Defendant "made statements

that contained deceptive associations between Plaintiff's Asserted Marks, trade dress, and the Infringing Products." (*Id.* at ¶ 89.) However, the first element of consumer-oriented conduct is not pled, and it is of most importance here. That is because, to be successful, Plaintiff must outright at the least, show the conduct is consumer oriented. *See Katsorhis v. 718 W. Beech St, LLC*, 234 A.D.3d 744, 748, 226 N.Y.S.3d 249, 254 (App. Div. 2d Dep't 2025) ("[P]arties ... must, at the threshold, charge conduct that is consumer oriented.")

Therefore, the undersigned finds that this claim is not properly pled, and Defaulting Default should not be found liable for Count VI and the claim should be dismissed.

### E. Count VII: Trademark Dilution Under New York Law

Plaintiff further alleges trademark dilution under N.Y. Gen. Bus. L. § 360-l. Section 360-l states that "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered." N.Y. Gen. Bus. L. § 360-l.

"Under New York state law, a plaintiff may obtain injunctive relief if it can show a '[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name[.]'" *E.A. Sween Co., Inc. v. A & M Deli Express Inc.*, 787 F. App'x 780, 786 (2d Cir. 2019) (citing *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 113-14 (2d Cir. 2009)). "[T]o establish dilution, a plaintiff must demonstrate '(1) ownership of a distinctive mark, and (2) a likelihood of dilution.'" *Shakuff LLC v. Shakuff Custom Glass Lighting Inc.*, No. 23-CV-123-EK-JRC, 2025 WL 977725 at *8 (E.D.N.Y. Mar. 7, 2025) (quoting *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 506 (2d Cir. 1996)). Distinctiveness is measured by "the strength of the mark for infringement purposes." *Id*. at *8 (quoting *Johnson & Johnson Consumer Cos. v. Aini*, 540 F. Supp. 2d 374, 394 (E.D.N.Y. 2008)).

Here, Plaintiff has demonstrated (1) ownership of a distinctive mark, and (2) likelihood of dilution. First, Plaintiff has incorporated images of its distinctive marks including "FullSend Canna" and "Send It!" and has further alleged that their marks have become "distinctive and famous . . . and were famous prior to the acts committed by Defendants." (ECF No. 22 at ¶¶ 40, 99.) Moreover, Plaintiff has also established a likelihood of dilution by alleging that Defendant was "destroying the exclusive association between the trade dress and FullSend's products, or otherwise lessening the capacity of the trade dress to exclusively identify FullSend and its products, and otherwise injure the business reputation of FullSend." (*Id.* at ¶ 100.) Moreover, Plaintiff alleges that Defendant's acts have caused Plaintiff "loss of control over its reputation and loss of substantial consumer goodwill." (*Id.* at ¶ 103.) Therefore, Plaintiff has established a claim for trademark dilution under New York law.

### F.  Count VIII: Passing Off Under New York Common Law

Lastly, Plaintiff alleges a claim for passing off, also known as palming off, under New York common law. Palming off is "the sale of the goods of one manufacturer as those of another." *N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F.Supp.3d 207, 228 (E.D.N.Y. 2020) (quoting *ITC Ltd. v. Punchgini, Inc.*, 880 N.E.2d 852, 858 (N.Y. 2007)). To prevail on a palming off theory, Plaintiff "must show a likelihood of confusion or deception of the consuming public as to the source of the allegedly infringing product [or service] *and* bad faith on the part of the Defendants." *Rockland Exposition, Inc. v. All. of Auto. Serv. Provider*, 894 F.Supp.2d 288, 326 (S.D.N.Y. 2012) (quoting *Tri-Star Pictures, Inc. v. Unger*, 14 F.Supp.2d 339, 363–64 (S.D.N.Y. 1998)).

Here, Plaintiff alleged that Defaulting Defendant passed off Plaintiff's good as their own. Plaintiff demonstrated that the public was likely to be confused as to the source of the infringing

products. Plaintiff's Amended Complaint states that Defendant's use of "CANNA" on the infringing product causes substantial confusion to consumers as Plaintiff also utilizes "CANNA" in its trademark. (ECF No. 22 at ¶ 39.) Likewise, Defendant's use of Plaintiff's trade dress is likely to cause confusion as to any affiliation between Plaintiff and Defendant. (*Id.* at ¶ 57.) Plaintiff contends that Defendant acted in bad faith through "the similarity of its Infringing Products to FullSend's trade dress." (*Id.* at ¶¶ 65, 72, 79, 85.) Thus, Plaintiff sufficiently demonstrated that Defendant passed off Plaintiff's products as their own.

### V.    *Relief Requested*

As mentioned, Plaintiff seeks only injunctive relief and not damages. (ECF No. 64-1 at 1.) Specifically, Plaintiff requests that upon granting default, for the Court to dismiss all of Defaulting Defendant's counterclaims so that this matter may be resolved. (*Id.* at 5.) Next, Plaintiff seeks a permanent injunction that would prevent Defendant from any further trademark infringement. (*Id.* at 18, 24.) Plaintiff also requests an Order that would have Defaulting Defendant destroy all trade dress products, remove all infringement products from the market and to serve Plaintiff with an affidavit that it complied with the injunction. (*Id.* at 25.) The undersigned considers each request.

As an initial matter, Plaintiff's request to dismiss all of Defaulting Defendant's counterclaims so that this matter may be resolved should be granted because as discussed above Defendant may not proceed *pro se*. (*Id.* at 5.) Moreover, Plaintiff is entitled to a permanent injunction. "A court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute, and (2) it meets the prerequisites for the issuance of an injunction." *CommScope, Inc. of N. Carolina v. Commscope (U.S.A.) Int'l Grp. Co.*, 809 F. Supp. 2d 33, 41 (N.D.N.Y. 2011) (quoting *Pitbull*

*Prods., Inc. v. Univ. Netmedia, Inc.,* No. 07-cv-1784, 2007 WL 3287368, at *5 (S.D.N.Y. Nov. 7, 2007)).

Here, the first prong is met because "the Lanham Act vests the court with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant . . . ." *See Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 159 (E.D.N.Y. 2010) (quoting 15 U.S.C. § 1116); *see also Century 21 Real Est. LLC*, 666 F. Supp. 2d at 295 (""[A]ccording to the principles of equity and upon such terms as the court may deem reasonable to prevent the violation of . . . [the Act.]"" (quoting 15 U.S.C. § 1116)).

As to the second prong, "[a]n injunction is warranted where a party has succeeded on the merits, there is an absence of an adequate remedy at law, and an injunction is necessary to prevent irreparable harm." *Id.* (citing *Roach v. Morse,* 440 F.3d 53, 56 (2d Cir. 2006)). Here, there is actual success on the merits for Plaintiff's claims. *See Rolls-Royce PLC*, 688 F. Supp. 2d 150, 159 (E.D.N.Y. 2010) ("Actual success on the merits is shown by virtue of the defendant's default.").

> It is well-established that a court may grant a permanent injunction as part of a default judgment. A permanent injunction should be granted when a plaintiff demonstrates: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Elegant Furniture & Lighting, Inc. v. GOLIGHTS, Inc.*, No. 22-CV-07172 (JMA) (ST), 2024 WL 343974, at *4 (E.D.N.Y. Jan. 30, 2024) (internal citations and quotations omitted) (granting permanent injunction against the defaulting defendant because "all four factors weigh in favor of Plaintiff"). Here, consideration of these factors also leads to granting a permanent

23

injunction.

First, Plaintiff has demonstrated that there is a likelihood of confusion between Plaintiff's and the Defaulting Defendant's products. (See ECF Nos. 64-1 at 13; 22 at ¶¶ 57, 68.) "In trademark infringement cases, irreparable injury may be established by demonstrating 'a likelihood of confusion.' … Because of '[t]he unique nature of the trademark's ... function in representing such an intangible asset 'as reputation and good will' ... irreparable harm is almost always found [in infringement cases] where probability of confusion exists.'" *Johnson & Johnson v. Azam Int'l Trading*, No. 07 -CV-4302 (SLT) (SMG), 2013 WL 4048295, at *12 (E.D.N.Y. Aug. 9, 2013).

Second, since "the losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable, remedies at law cannot adequately compensate Plaintiff for its injuries." *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 541 (S.D.N.Y. 2011), aff'd, 511 F. App'x 81 (2d Cir. 2013) (citing and quoting *Northwestern Nat'l Ins. Co. of Milwaukee, Wisc. v. Alberts,* 937 F.2d 77, 80 (2d Cir.1991) ("The irreparable injury requisite for the preliminary injunction overlaps with the absent lack of adequate remedy at law necessary to establish the equitable rights."). *Third*, balancing the hardships between the parties, shows that Plaintiff will suffer more by the confusing caused to its customers. *See New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) (discussing confusion of customers caused by defendant's conduct favors the plaintiff). Fourth, the Court has a duty to ensure the public's interest. *See id.* ("the public has an interest in not being deceived").

With that, the undersigned recommends that the Court enter judgment permanently enjoining the Defaulting Default from any further infringing conduct. It likewise follows that

Plaintiff is entitled to a judgment directing the Defaulting Defendant to destroy all trade dress products and remove the products from the market as part of the permanent injunction to ensure no infringement products are being sold. This requested relief squarely fits with the trademark violation. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (citing *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 50 (2d Cir.1996)) ("We have instructed that injunctive relief should be 'narrowly tailored to fit specific legal violations[.]'").

Finally, the judgment should also direct the Defaulting Defendant to serve Plaintiff with an affidavit that it complied with the injunction within thirty days after service is made. *See* 15 U.S.C.A. § 1116(a) ("Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction."); *see also Ultra Recs. LLC v. Ultra Int'l Music Publ'g*, No. 22-CV-9667 (AS), 2025 WL 602943, at *11 (S.D.N.Y. Feb. 25, 2025) (ordering Defendant to serve a sworn statement pursuant to 15 U.S.C. § 1116, within thirty days of service).

## **CONCLUSION**

Accordingly, for the reasons set forth above, the Court respectfully recommends that Plaintiff's Motion for Default Judgment (ECF No. 64) be **GRANTED** as follows:

(i)     Defaulting Defendant to be found liable on all of Plaintiff's claims asserted in the Amended Complaint (ECF No. 22) <u>except</u> for Count V for Unfair Competition and False Designation of Origin under the Lanham Act, and Count VI for Deceptive Practices and False Advertising, which should be dismissed;

(ii)    Dismissing all of Default Defendant's counterclaims set forth in ECF No. 25;

(iii)   Enter a Permanent Injunction against Defaulting Defendant enjoining it from any further infringement conduct as outlined in the Proposed Order (ECF No. 64-7);

(iv)    Enter judgment directing Defaulting Defendant to destroy all trade dress products and remove the products from the market as part of the permanent injunction; and

(v)     Enter judgment directing the Defaulting Defendant to serve Plaintiff with an affidavit that it complied with the Injunction within thirty (30) days after service is made.

## **OBJECTIONS**

A copy of this Report and Recommendation is being electronically served on Plaintiff's Counsel. Counsel for Plaintiff is to serve the Defaulting Defendant with this Report and Recommendation and file proof of service on ECF <u>within two business days</u>. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review

of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated:  Central Islip, New York.
       July 16, 2025

                                    **RESPECTFULLY RECOMMENDED**,

                              /S/ *James M. Wicks*

                                 JAMES M. WICKS
                        United States Magistrate Judge